UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VICTOR VELEZ, | No. ED CV 07-643-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 29, 2007, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 15, 2007, and June 18, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 5, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on June 25, 1958. [Administrative Record ("AR") at 62, 334.] He has a high school equivalent education [AR at 358], and, according to the ALJ, has past relevant work experience as a cleaner. [AR at 19.][1]

On April 15, 1996, plaintiff was found disabled and awarded benefits, apparently for a mental impairment. [AR at 70, 365.] Those benefits were terminated for a non-medical reason in approximately 2002 when plaintiff was incarcerated. [AR at 364-65.][2]

On April 1, 2004, plaintiff filed the instant application for Supplemental Security Income payments, alleging that he has been unable to work since January 1, 1996, due to auditory hallucinations, difficulty concentrating, and forgetfulness. [AR at 62-63, 70, 73.] After his application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 35.] A hearing was held on September 27, 2005, at which time plaintiff appeared with counsel and testified on his own behalf. A vocational and a medical expert also testified. [AR at 330-88.] On February 23, 2006, the ALJ determined that plaintiff was not disabled. [AR at 10-20.] Plaintiff requested review of the hearing decision. [AR at 8-9.] On April 13, 2007, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. [AR at 5-7.] This action followed.

---

[1] Plaintiff argues in the Joint Stipulation that the ALJ erred in concluding that plaintiff's prison job as a porter/cleaner qualifies as past relevant work. As explained below, the Court does not address plaintiff's claim in light of its decision to remand the action for further proceedings.

[2] Plaintiff's benefits were suspended, presumably pursuant to 42 U.S.C. § 402(x)(1)(a), upon plaintiff's incarceration. [AR at 364-65.] Because plaintiff remained incarcerated, with his benefits suspended, for more than 12 months, his benefits were ultimately terminated pursuant to 20 C.F.R. § 416.1335. A claimant whose benefits have been terminated for non-medical reasons and at some later date submits an initial application for benefits must establish that he or she satisfies all the requirements, including medical disability, of the Act. Warren v. Bowen, 804 F.2d 1120, 1121 (9th Cir. 1986), as amended, 817 F.2d 63 (9th Cir. 1987). Thus, under Warren, plaintiff is not entitled to a presumption of continuing disability because his benefits were terminated for a non-medical reason. Id.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability. [AR at 15.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: psychosis, depressive disorder, and substance addiction disorder, in remission. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 15-16.]
/
/
/

The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform work up to and including a medium exertional level, limited to a habituated work setting, involving simple and repetitive work. The ALJ further concluded that plaintiff could not tolerate intense supervision or production-line type work, could tolerate only occasional interaction with co-workers, and could not interact with the general public. Finally, the ALJ concluded that plaintiff could not operate hazardous machinery or work at unprotected heights. [AR at 18.] At step four, the ALJ concluded that plaintiff is capable of performing his past relevant work as a cleaner/porter. [AR at 19.] Accordingly, the ALJ found plaintiff not disabled, and did not proceed to step five in the process. [Id.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to: (1) obtain plaintiff's prior claims file; (2) allow a supplemental hearing for the purpose of cross-examining the author of a psychiatric report obtained after the hearing; (3) properly consider all of the available medical evidence of record; (4) properly evaluate plaintiff's capacity to perform past relevant work; and (5) properly assess plaintiff's credibility. Joint Stipulation ("Joint Stip.") at 3-4. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling ("SSR")[4] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the treating physician has not herself considered." (citation omitted)). However, even if an examining physician's opinion constitutes

---

[4] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

6

substantial evidence, the treating physician's opinion is still entitled to deference.[5]  See id.; see also SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (emphasis in original). The opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence in the record. Id. at 830-31. "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984)).

Plaintiff contends that the ALJ failed to properly consider the medical evidence by not providing any clear and convincing reasons to reject the treating source opinions. Joint Stip. at 11. On December 6, 2004, plaintiff's treating psychologist, Shirley Simmons, Ph.D., completed a form entitled, "Medical Opinion Re: Ability to do Work-Related Activities (Mental)." Dr. Simmons concluded that plaintiff had "good" ability to ask simple questions or request assistance, be aware of normal hazards and take appropriate precautions, and use public transportation. Dr. Simmons further concluded that plaintiff had "fair" ability to remember work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, make simple work-related decisions, set realistic goals or make plans independently of others, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. [AR at 274-77.] In addition, Dr. Simmons concluded that plaintiff had "poor" or no ability to maintain

---

[5] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

attention for two hour segments, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, understand and remember detailed instructions, carry out detailed instructions, deal with stress of semiskilled and skilled work, interact appropriately with the general public, and travel in unfamiliar places. [AR at 274-77.] Dr. Simmons explained that her conclusions were based in part on plaintiff's auditory hallucinations, that he is easily distracted by external stimuli, his lower than average frustration tolerance, and his tendency to misinterpret the behavior of others. [AR at 276.] Dr. Simmons further noted that plaintiff becomes uncomfortable in new situations and unfamiliar environments, which causes anxiety, agitation, and exacerbation of his symptoms. [AR at 277.] Finally, Dr. Simmons estimated that plaintiff's impairments would cause him to be absent from work more than four days per month. [AR at 277.] On July 8, 2005, seven months later, Dr. Simmons noted that her assessment of plaintiff was unchanged. [AR at 277.]

The ALJ rejected Dr. Simmons' assessment, citing three reasons. First, the ALJ found that Dr. Simmons' assessment was less persuasive because it was conclusory, unsupported by objective clinical evidence, and in a "check-the-box" format. [AR at 17.] An ALJ may properly reject a treating physician's opinion that is conclusory and unsupported by clinical findings, particularly check-the-box style forms. See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the ALJ did not err in giving minimal evidentiary weight to the opinions of the plaintiff's treating physician where the opinion was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of the plaintiff's medical condition, and was based on the plaintiff's subjective descriptions of pain); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)

(treating physician's opinion may be rejected if it is brief, conclusory, and inadequately supported by clinical findings); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected psychological evaluations because they were check-the-box reports that did not contain explanations of the bases of their conclusions). However, the form completed by Dr. Simmons was not conclusory or unsupported by clinical findings, and was not a typical check-the-box style form.

Although Dr. Simmons' form did contain many check-the-box type questions, it also required Dr. Simmons to provide support for those conclusions by citing clinical findings. Dr. Simmons did just that by noting specific clinical observations in support of her opinions. [AR at 276-77.] Furthermore, Dr. Simmons gave unprompted explanatory notations to the side of several of the check-the-box criteria, providing additional clinical insight into her conclusions. [AR at 275, 276.] Moreover, both Dr. Simmons' check-the-box and annotated responses are consistent with the other medical evidence of record. It is undisputed that plaintiff suffers from a mental condition characterized by auditory hallucinations.[6] [AR at 139, 141, 142, 144, 145, 147, 151, 152, 155, 156, 158, 267.] Also, his Global Assessment of Functioning[7] score has ranged between 45 and 55 throughout the record [AR at 161, 187, 190], indicating at best moderate impairments in occupational functioning (see DSM-IV at 34), and at worst serious impairments in occupational functioning. Id. In addition, it was reported on several occasions that plaintiff exhibited anxiety and paranoia [AR at 145, 158], inappropriate moods [AR at 147, 223, 228, 229, 265, 267], and difficulty maintaining appearance or personal hygiene. [AR at 141, 228, 231.]

---

[6] Although defendant claims that "Plaintiff told his treating providers that he was not hearing voices" (Joint Stip. at 21), this misrepresents the record as a whole. Plaintiff apparently did deny suffering from auditory hallucinations at times [AR at 279, 283, 288, 299, 302], but at other times he informed his treating psychiatrist that he was still having auditory hallucinations despite the medication. [AR at 139, 267, 268.]

[7] A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000).

Next, the ALJ rejected Dr. Simmons' findings because they are contradicted by clinical records from the same treating facility. [AR at 17.] The ALJ specified that Dr. Simmons' findings were contradicted by plaintiff's GAF scores, which were reported to be as high as 55. [AR at 17.] The ALJ also noted that during the time plaintiff's GAF score increased, the amount of medication he was prescribed (Seroquel) decreased. [AR at 17-18.]

Significantly, the record reflects that plaintiff was assessed a GAF score of 55 only once, and it was assessed by plaintiff's treating psychiatrist, Mary Poonan, M.D., during her initial evaluation of plaintiff. [AR at 187.] Dr. Poonan did not re-assess plaintiff's GAF at any point in the record. However, plaintiff's treating physicians from the California Department of Corrections, who treated plaintiff throughout his incarceration, assessed plaintiff's GAF scores between 45 and 50. [AR at 161, 190.] Notably, Kenneth Germanow, Ph.D., who treated plaintiff while he was in prison, rated plaintiff's GAF at 45 just five days before Dr. Poonan noted a GAF score of 55 on her first meeting with plaintiff. [AR at 187.] Moreover, although a GAF score of 55[8], indicating moderate occupational difficulties, is not inconsistent with a finding of employability, neither does it contradict Dr. Simmons' findings. In fact, a GAF score of 55 appears to be consistent with Dr. Simmons' assessment, in which she indicated that plaintiff exhibited a fair ability to function in many categories. [AR at 274-77.] Further, a GAF score of 55 would not independently contradict Dr. Simmons' finding that plaintiff's symptoms would cause him to be absent from work more than four days a month.

The ALJ's conclusion that plaintiff's GAF score increased while his prescribed dosage of medication decreased is inconsistent with the record. On November 5, 2002, plaintiff's GAF score was noted to be 50. Two days later, plaintiff was started on 300 mg of Seroquel. [AR at 159, 161.] On December 9, 2002, plaintiff's Seroquel was *increased* to 400 mg daily. [AR at 156.] Nevertheless, plaintiff's GAF score, as noted by a social worker with the Department of

---

[8] A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM IV at 34.

Corrections[9], *decreased* to 45. [AR at 233.] On January 22, 2003, plaintiff's Seroquel was again *increased* to 425 mg daily. [AR at 145.] On April 24, 2003, plaintiff's GAF score was again reported to be 45. [AR at 190.] On April 29, 2003, plaintiff's GAF score was reported at 55; his Seroquel dosage remained steady for nearly seven months afterward. [AR at 187, 309, 312-14.] As the record reflects, plaintiff's dosage of Seroquel was never decreased during the period in which plaintiff's GAF scores were reported. Although plaintiff's dosage was in fact decreased on January 5, 2004, over eight months after the last reported GAF score, the dosage was increased again just three and one-half months later. [AR at 227, 268-69.] Finally, contrary to the ALJ's findings, plaintiff did not testify at the hearing that he was taking only 300 mg of Seroquel. [AR at 18.] Rather, plaintiff testified at the hearing, and an extensive discussion occurred, that he was taking 600 mg daily and occasionally supplemented that with an additional 200 mg. [AR at 337-40.] See Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) (materially "inaccurate characterization of the evidence" by the ALJ constitutes error).

The third reason the ALJ cited for rejecting Dr. Simmons' opinion appears similar to the second, i.e., that Dr. Simmons' findings were inconsistent with the other medical evidence from the treating facility. [AR at 18.] For the third reason, the ALJ cited as an example plaintiff's ability to regularly attend his group therapy sessions and psychiatric appointments. [AR at 18.] However, the ability to attend monthly medical appointments does not necessarily translate into an ability to maintain regular daily attendance throughout an entire workweek. Moreover, there is some evidence in the record indicating plaintiff's attendance at medical appointments was prompted and perhaps facilitated by his parole agent. [AR at 270.] Finally, and perhaps most significantly, the ALJ is mistaken in implying that plaintiff did not miss his medical appointments. The record reflects that plaintiff missed at least one of his group therapy sessions, apparently

---

[9] A social worker's opinion is an "acceptable source" of medical evidence only if the social worker acts in conjunction with a licensed physician or psychologist. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(a), (e)(1) and 416.913(a), (e)(1). It is not clear from this record whether the social worker who assessed plaintiff's GAF was working with a licensed physician or psychologist.

because his parole agent was on vacation [AR at 270], and at least two psychiatric appointments. [AR at 230, 268.]

Accordingly, the ALJ erred by not giving any specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Simmons' opinion. As such, remand is warranted on this issue.[10]

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the opinion of plaintiff's treating source. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: October 10, 2008

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[10] As the ALJ's consideration on remand of the treating physician's assessment may impact the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order.